UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------X
UNITED STATES OF AMERICA,

             -against-                             MEMORANDUM OF
                                                       DECISION & ORDER
OSCAR GUEVARA-CANALES,                  15-CR-247 (ADS)

                      Defendant.
---------------------------------------------------------X

**APPEARANCES:**

**United States Attorney's Office, Eastern District of New York**
*Attorneys for the Government*
610 Federal Plaza
Central Islip, NY 11722
        By:    Bradley T. King, Assistant United States Attorney.

**Alan Nelson, Esq.**
*Attorney for the Defendant*
3000 Marcus Avenue, Suite 1E5
Lake Success, New York 11042

**SPATT, District Judge:**

On July 10, 2015, defendant Oscar Guevara-Canales (the "Defendant") pleaded guilty to an indictment charging him with unlawful re-entry into the United States subsequent to removal following conviction of an aggravated felony in violation of 8 U.S.C. § 1326(a). Thereafter, the Court sentenced the Defendant to 14 months' incarceration, which the Defendant has since completed.

Presently before the Court is a petition by the Defendant requesting a writ of *coram nobis* vacating his conviction. For the following reasons, the Court denies the Defendant's petition.

## I. BACKGROUND

The Defendant is a citizen of Honduras, who entered the United States on or about January 12, 1999. ECF 29-1, Ex. 1, Part 2. About two years later, the Defendant filed applications for

1

Temporary Protected Status ("TPS") and Employment Authorization ("EA") with the United States Department of Justice's Immigration and Naturalization Service ("INS"). ECF 29-1, Ex. 1, Ex. 2. In the application, the Defendant falsely stated that he was a citizen of El Salvador because doing so enabled him "to get a permit to work." ECF 29-1, Ex. 3, at 3. Through this deception, the Defendant fraudulently secured a Salvadorian passport, after bringing two witnesses to the Salvadorian consulate to falsely claim that they knew the Defendant was a Salvadorian citizen. *Id.*

Between July 17, 2001 and February 28, 2005, the Defendant repeatedly filed TPS and EA applications. The Defendant signed all these forms, each of which repeated the Defendant's lie that he was a Salvadorian citizen, "under penalty of perjury." ECF 29-1, Ex. 1, Ex. 2, Ex. 4, Ex. 5, Ex. 6, Ex. 7, Ex. 8, Ex. 9. Ex. 10. The February 28, 2005 applications, the last signed and sworn forms with the Defendant's address, stated that his "U.S. Mailing Address," "Address in the United States" or "[A]ddress" was PO Box 747, Glen Cove, NY 11542 (the "Glen Cove PO Box"). ECF 29-1, Ex. 8, Ex. 9.

Part 4 of the TPS application, labeled "Eligibility Standards," informed the Defendant that "to be eligible for [TPS], you must be admissible as an immigrant to the United States," and then inquired about whether "any of the following [questions] appl[ied]" to the Defendant, including:

> • have you been convicted by a final judgment of a particularly serious crime, constituting a danger to the community of the United States (an alien convicted of an aggravated felony is considered to have committed a particularly serious crime); and
>
> • have you been arrested, cited, charged, indicted, fined or imprisoned for breaking or violating any law or ordinance, excluding traffic violations[.]

*See, e.g.*, ECF 29-1 Ex. 8, Part 4 § 2b(ii), § 2d. The Defendant's February 28, 2005 TPS application certified that "NONE" of these triggers of ineligibility applied to him. *Id.* Part 4 § 2.

On July 12, 2005, INS approved the Defendant's February 28, 2005 EA application. The approval stated that the EA expired on September 9, 2006. ECF 29-1, Ex. 9. Between 2006 and

2009, however, the Defendant did not file any forms or update his address with any governmental agency.

On April 5, 2006, the Defendant was convicted in Nassau County of sexual misconduct, in violation of New York Penal Law § 130.20(1), an aggravated felony offense, and was sentenced to a six-year term of probation. ECF 29-1, Ex. 12.

On or about July 25, 2006, the United States Citizenship and Immigration Services ("USCIS") learned of the Defendant's conviction and sent a notice to the Glen Cove PO Box, informing the Defendant that USCIS intended to withdraw his TPS. ECF 29-1, Ex. 13. The letter directed the Defendant to provide USCIS with information about his conviction and stated that the "[f]ailure to submit such evidence will result in withdrawal of [TPS]." *Id.* at 2.

Based upon the Defendant's failure to submit evidence of his conviction in response to USCIS's July 25, 2006 letter, on or about January 23, 2007, USCIS sent a second letter to the Glen Cove PO Box, stating that USCIS was "withdrawing" his TPS and providing the Defendant with notice of his right to appeal the withdrawal. ECF 29-1, Ex. 14.

On April 20, 2007, USCIS mailed a Notice to Appear for Removal Proceedings ("NTA") to the Glen Cove PO Box. ECF 29-1, Ex. 15. A USCIS employee documented this mailing in an "I-862 NTA Processing Worksheet," stating that an "NTA photocopy [was] mailed . . . to [the] alien's last known address." *Id.* at 3. The NTA stated that the Defendant was "required to provide INS, in writing, with your full mailing address and telephone number" and informed him that a failure to notify the Immigration Court in writing of any address change would result in "a removal order . . . made by the immigration judge in your absence." *Id.* at 2.

3

On May 1, 2007, the Immigration Court mailed a Notice of Hearing ("NOH") to the Glen Cove PO Box, which informed the Defendant that his removal hearing was scheduled for May 29, 2007 at 8:30 a.m. (the "2007 Removal Proceeding"). *See* ECF 28-1, Ex. F, at 5.

On May 30, 2007, the Immigration Court mailed its decision (the "Removal Order") to the Glen Cove PO Box, informing the Defendant that the Court had ordered him to be removed based upon his failure to appear at the May 29, 2007 removal hearing. See *id.* at 7. Both the NOH and the Removal Order were returned to sender on or about June 6 and June 7, 2007, respectively. *Id.* at 6, 8.

On November 2, 2009, United States Immigration and Customs Enforcement ("ICE") officers arrested the Defendant in Mineola, New York while he was attending a scheduled visit with his probation officer based upon his six-year probationary sentence for sexual misconduct.

On November 10, 2009, the Defendant's then-immigration counsel, Edward Bernstein ("Bernstein"), filed a motion to reopen the 2007 Removal Proceeding. ECF 29-1, Ex. 16. In that motion, the Defendant contended that he "never received notice of his court date." *Id.* at 1. In support of this motion, the Defendant submitted an affidavit from his fiancé, claiming that when the Immigration Court sent the notice of the 2007 Removal Proceeding, she was residing with the Defendant at a different address in Glen Cove, New York. *Id.* at 2.

On January 5, 2010, the Immigration Court denied the motion to reopen, reasoning that the Defendant failed to submit his own affidavit; offered nothing to corroborate his "alleged place of residence" at the time that the notice of his removal hearing was sent; and had failed to address when he first learned of the Removal Order. *Id.* at 2–3. A copy of the Immigration Court's order denying the motion to reopen (the "2010 Denial Order") was served upon the Defendant's counsel, along with a notice that the Defendant had 30 days to appeal the 2010 Denial Order. *Id.* The

Defendant did not appeal that order, however, and on or about March 1, 2010, the Defendant was deported to Honduras. ECF 28-1, Ex. A, ¶ 2.

About September 2010, the Defendant illegally reentered the United States. ECF 29-1, Ex. 3 at 4. About five years later, on May 6, 2015, ICE officers arrested the Defendant and he was charged with the illegal reentry offense. See ECF 28-1, Ex. A, ¶ 3. At his initial appearance, the Court appointed Randi Chavis of the Federal Defenders ("plea counsel") to represent the Defendant.

In an affidavit submitted in connection with these proceedings, plea counsel averred that the Defendant "did not become aware" that he was not served with notice of the 2007 Removal Proceeding until after his conviction. ECF 28-1, Ex. J, ¶ 6. However, she also explained to the Defendant that she reviewed discovery that the Government provided. *Id.* ¶ 3. That discovery included the Defendant's Mirandized statements that he "was removed" from the United States; did not apply for permission to reenter the United States; and knew that "entering the United States after removal without permission was illegal." ECF 29-1, Ex. 17 at 2. Thereafter, plea counsel explained the elements of the illegal reentry offense; the evidence required to prove those elements; potential defenses; the sentencing guidelines; and the immigration consequences of an illegal reentry conviction. ECF 28-1, Ex. J, ¶ 4. In addition, plea counsel specifically asked the Defendant "whether he was then aware of any basis to challenge the removal proceedings that led to the entry of his Order of Removal." *Id.* ¶ 5.

Following further discussions with the Defendant, plea counsel advised him to plead guilty to obtain a reduction under the Sentencing Guidelines and to obtain an expedited transfer to immigration custody where he could "litigate his removal, seek release while litigating his removal or consent to a more expedited removal from the United States." *Id.* ¶ 7.

5

On July 10, 2015, pursuant to these discussions, the Defendant pleaded guilty to an indictment charging him with the illegal reentry offense and thereafter he was sentenced to 14 months' incarceration. ECF 12; ECF 13. While serving the federal sentence imposed by the Court, the Bureau of Immigration and Custom Services ("BICE") filed a detainer upon the Defendant premised upon the Removal Order. Upon the Defendant's completion of his sentence, he was transferred from the custody of the Bureau of Prisons to the custody of BICE.

In 2016, the Defendant was released on bond by the Immigration Court and presently resides with his wife pending the completion of his immigration proceedings.

On October 5, 2017, the Defendant's current immigration counsel moved to reopen the 2007 Removal Proceeding and the 2010 Denial Order and sought to obtain asylum for the Defendant based upon alleged threats to his safety. In support of this application, the Defendant submitted his own affidavit and an affidavit from his wife. As relevant here, they admitted that the Defendant listed his Glen Cove PO Box address on his "Temporary Protective Status" Applications, but they claimed that the Defendant closed his Glen Cove PO Box "on or about December [] 2004." *See* ECF 28-1, Ex. D, ¶¶ 16–17, Ex. E ¶¶ 19–20.

The Government did not respond to the Defendant's motion to reopen and, on October 26, 2017, Immigration Judge Frederic G. Leeds granted it based upon the Defendant's affidavit and the fact that the NOH was returned to the Court. ECF 28-1, Ex. G.

## II. DISCUSSION

### A. THE LEGAL STANDARD.

*Coram nobis* relief is "an 'extraordinary remedy' available only in rare cases." *Kovacs v. United States*, 744 F.3d 44, 54 (2d Cir. 2014) (quoting *United States v. Morgan*, 346 U.S. 502, 511, 74 S.Ct. 247, 252, 98 L.Ed. 248 (1954)). Its application is "strictly limited to those cases in

which errors of the most fundamental character have rendered the proceeding itself irregular and invalid." *United States v. Foont*, 93 F.3d 76, 78 (2d Cir. 1996). The writ is "essentially a remedy of last resort" because unlike habeas relief, the petitioner is no longer in custody. *Fleming v. United States*, 146 F.3d 88, 89–90 (2d Cir. 1998) (per curiam); *see also United States v. Mandanici*, 205 F.3d 519, 532 (2d Cir. 2000) (Kearse, J., concurring) ("[T]he granting of *coram nobis* normally results in the expungement of the conviction, with no possibility of further proceedings to determine whether the petitioner was guilty of the offense charged."). "The harm to the petitioner is therefore much less and, accordingly, courts are more reluctant to grant relief." *Moskowitz v. United States*, 64 F.Supp.3d 574, 577–78 (S.D.N.Y. 2014) (collecting cases).

In light of this high bar, a petitioner seeking the grant of *coram nobis* must make three showings: (1) "there are circumstances compelling such action to achieve justice"; (2) "sound reasons exist for failure to seek appropriate earlier relief"; and (3) "the Petitioner continues to suffer legal consequences from his conviction that may be remedied by granting of the writ." *Kovacs*, 744 F.3d at 49. The Court presumes that the prior proceedings were correct, and "the burden rests on the accused to show otherwise." *Morgan*, 346 U.S. at 512, 74 S.Ct. at 253.

**B. APPLICATION TO THE FACTS.**

The Defendant claims that his conviction for unlawfully reentering the United States following removal compels *coram nobis* relief, because the removal proceeding underlying his conviction was defective due to his lack of notice. In that regard, he also alleges that plea counsel provided ineffective representation for failing to collaterally challenge the Removal Order in a motion to dismiss the indictment pursuant to 8 U.S.C. § 1326 ("Section 1326").

The Court finds that the Defendant has failed to establish an entitlement to *coram nobis* relief, because he is incorrect that he would have prevailed on a motion to dismiss the indictment.

1. As to Section 1326.

Section 1326(d) provides that:

In a criminal proceeding under this section, an alien may not challenge the validity of the deportation order described in subsection (a)(1) or subsection (b) unless the alien demonstrates that--

(1) the alien exhausted any administrative remedies that may have been available to seek relief against the order;

(2) the deportation proceedings at which the order was issued improperly deprived the alien of the opportunity for judicial review; and

(3) the entry of the order was fundamentally unfair.

8 U.S.C.A. § 1326(d). The three "requirements are conjunctive, and thus [defendant] must establish all three in order to succeed in his challenge to his removal order." *United States v. Fernandez–Antonia*, 278 F.3d 150, 157 (2d Cir. 2002)

In the Court's view, the Defendant has failed to establish either that the 2007 Removal Proceeding was fundamentally unfair under Section 1326(d)(3) or that he suffered from ineffective assistance of immigration counsel excusing his failure under that provision. Accordingly, the Defendant possessed no cognizable claim for vacating the Removal Order at the time of his guilty plea. *See United States v. Espinoza*, No. 19-cr-00641, 2020 WL 1049143, at *5, *12 (S.D.N.Y. Mar. 4, 2020) (denying motion to dismiss by defendant who "satisfied the first two requirements under Section 1326(d)" because he "failed to show that his prior removal order was fundamentally unfair").

   a. As to Section 1326(d)(3).

In order for an alien to substantiate a deportation order's fundamental unfairness under Section 1326(d)(3), he must show "'both a fundamental procedural error and prejudice resulting from that error.'" *United States v. Williams*, 733 F.3d 448, 455 (2d Cir. 2013) (quoting *United*

*States v. Cerna*, 603 F.3d 32, 40–41 (2d Cir. 2010)). The defendant-alien bears the burden of showing fundamental unfairness. *See United States v. Daley*, 702 F.3d 96, 100 (2d Cir. 2012).

The Defendant alleges that the 2007 Removal Proceeding suffered from a fundamental procedural error due to the lack of adequate notice. According to the Defendant, the Government sent all notices of the proceeding to the Glen Cove PO Box, where he no longer resided at the time, so that he never learned that he was subject to removal. As a result, the Immigration Court ordered his removal *in absentia*. While the absence of notice might in some situations warrant a finding of fundamental procedural error, the Defendant's particular circumstances do not justify that conclusion.

For notice of removal proceedings, the Second Circuit has endorsed "a presumption of receipt to a notice sent by regular mail where the record establishes that the notice was properly addressed and mailed according to normal office procedures." *Lopes v. Gonzales*, 468 F.3d 81, 86 (2d Cir. 2006). The Court finds that the Government has established an entitlement to that presumption, and that the Defendant has failed to rebut that presumption.

8 U.S.C. § 1229(a)(1) provides for service of written notice of removal proceedings by mail. In addition, statutory and regulatory requirements mandate that aliens receiving TPS and EA furnish the Government their new address within ten days of any change of address. *See* 8 U.S.C. § 1305(a) ("Each alien required to be registered under this subchapter who is within the United States shall notify the Attorney General in writing of each change of address and new address within ten days from the date of such change and furnish with such notice such additional information as the Attorney General may require by regulation."); 8 C.F.R. § 265.1 ("Except for those exempted by section 263(b) of the Act, all aliens in the United States required to register

under section 262 of the Act must report each change of address and new address within 10 days of such change in accordance with instructions provided by USCIS.").

The Second Circuit has read these two provisions together to find the presumption of receipt applicable when the Government sends the notice to the alien's last known address. *Fuentes-Argueta v. INS*, 101 F.3d 867, 871 (2d Cir. 1996) (holding that an IJ provides "adequate notice . . . so long as the IJ conveys notice of a deportation hearing in person or by certified mail to the alien's last known address, regardless of whether the notice is actually received by the alien."); *Illangakoon v. Holder*, 317 F. App'x 39, 41 (2d Cir. 2009) ("We have previously held that the notice requirements are presumptively satisfied so long as the IJ conveys notice of a deportation hearing in person or by certified mail to the alien's last known address, regardless of whether the notice is actually received by the alien.").

Here, it is undisputed that the Government sent the applicable notices to the Defendant's last known address. On his February 28, 2005 TPS and EA applications, the Defendant swore under penalty of perjury that his mailing address was the Glen Cove PO Box. ECF 29-1, Ex. 9, Ex. 10. Even if he no longer resided at that address, he failed to register a change of address as required, so that the Glen Cove PO Pox must be considered his last known address. Thus, the presumption of receipt is applicable, and the Defendant can only demonstrate fundamental error by overcoming it.

The presumption of receipt is "rebuttable." *Lopes*, 468 F.3d at 85. In that regard, an alien "may . . . rebut that presumption with an affidavit and other evidence," *Hu Jin v. Holder*, 590 F. App'x 11, 12 (2d Cir. 2014), which would "mak[e] it appear unlikely that the alien would have ignored the proceeding if he had received notice of it." *Chen v. U.S. Atty. Gen.*, 502 F.3d 73, 76 (2d Cir. 2007). For instance, the alien may defeat the presumption by establishing the absence of

"motive to miss the hearing" or a "general willingness to comply with U.S. immigration laws and a desire to have his case heard." *Hu Jin*, 590 F. App'x at 12.

The Plaintiff relies on affidavits from himself and his wife alleging that he never had notice of the 2007 Removal Proceeding, because they resided at a different address at the time. ECF 28-1, Ex. D, Ex. E. The Immigration Court relied on those affidavits when reopening the 2007 Removal Proceeding. ECF 28-1, Ex. G. Although the fact that the Immigration Court reopened the proceeding is certainly probative, the Court notes that the Defendant's motion to re-open was unopposed by the Government, so that Judge Leeds never assessed the evidence presently before the Court. In the Court's view, the affidavits here, standing alone, are insufficient to rebut the presumption of receipt, in light of all the other evidence tending to show a motive to miss the proceeding. *See Lopes*, 468 F.3d at 85–86 ("Although an affidavit of non-receipt might be insufficient by itself to rebut the presumption, it does raise a factual issue that the BIA must resolve by taking account of all relevant evidence-not merely that evidence sufficient under Grijalva.").

Between July 17, 2001 and February 28, 2005, the Defendant repeatedly filed TPS and EA applications, and informed the government of any notable change of address. *See* ECF 29-1, Ex. 1, Ex. 2, Ex. 4, Ex. 5, Ex. 6, Ex. 7, Ex. 8, Ex. 9, Ex. 10. It was not until he sustained his 2006 Sexual Misconduct conviction that he let his TPS and EA expire and ceased contact with the Government. Importantly, each of his prior applications put the Defendant on notice that his conviction was likely to lead to the denial of any subsequent applications. *See, e.g.*, ECF 29-1 Ex. 8, Part 4. As a result, the Defendant had a substantial motive to avoid immigration proceedings.

Moreover, the affidavits are either uncorroborated or inconsistent in material respects. Although the NOH and Removal Order were returned to sender, there is no indication in the Defendant's immigration records, and the Defendant has submitted no other documentary proof,

that earlier notices were returned to sender, specifically, the two notices regarding the withdrawal of his TPS and the April 20, 2007 notice to appear for the 2007 Removal Proceeding. *See* ECF 28-1, Ex. D, Ex. E; ECF 29-1, Ex. 13, Ex. 14, Ex. 15. Of importance, the affidavits from the Defendant and his wife aver that they were aware that the petitioner's "[TPS] was denied." *See* ECF 28-1, Ex. D ¶ 17, Ex. E, ¶ 20. Considering that the notice of withdrawal of the Defendant's TPS designation was sent to the Glen Cove PO Box on January 23, 2007, the affidavits' contention that the Defendant failed to receive anything sent to the Glen Cove PO Box after he changed residences is not credible.

Finally, and perhaps most significantly, the Defendant has admitted to repeatedly lying under penalty of perjury in connection with his TPS and EA applications. On each of his applications, the Defendant falsely alleged himself to be of Salvadorian citizenship. In furtherance of this scheme, he enlisted two others to help him fraudulently secure a passport. ECF 29-1, Ex. 3, at 2–3.

Therefore, the Court finds that no fundamental procedural error occurred, notwithstanding the fact that the NOH and Removal Order were returned undelivered, because the Defendant failed to rebut the presumption of receipt. *See Fuentes-Argueta*, 101 F.3d at 872 (finding that the return unclaimed of a mailed notice of deportation proceedings does not *per se* overcome the presumption of effective service); *Haider v. Gonzales*, 438 F.3d 902, 908–09 (8th Cir. 2006) (finding alien's "due-process rights were not violated" when he "supplied the INS, and thus the Immigration Court, with his address, but later moved without notifying either the INS or the Immigration Court," so that "[t]he only reason [he] did not receive the NOH was because he moved without complying with his duty to update his mailing address."); *United States v. Estrada-Trochez*, 66 F.3d 733, 736 (5th Cir. 1995) ("While his case was pending, the statutory duty remained on the Appellant to

"notify the Attorney General in writing of each change of address and new address within ten days from the date of such change...." 8 U.S.C. § 1305... [T]he ultimate fault lies with the Appellant for his failure to comply with a law that is essential to the administration of the INS.").

As a result, the Plaintiff cannot allege that he was prejudiced by his failure to learn of other forms of relief, such as Section 212(c) or voluntary departure, due to missing his removal proceeding. *See Hu Jin*, 590 F. App'x at 13 ("Because [the alien] failed to rebut the presumption [of receipt], his attorney's alleged failure to notify him about that decision cannot have caused prejudice."); *United States v. Jackson*, No. 12-cr-10, 2012 WL 6641528, at *5 (S.D.N.Y. Dec. 17, 2012) ("Because Defendant has failed to show a fundamental procedural error, he has not demonstrated that the entry of the 1986 Deportation Order was fundamentally unfair. Pursuant to 8 U.S.C. § 1326(d), he may not challenge the 1986 Order collaterally."); *United States v. Perez-Almeida*, No. 19-cr-61, 2019 WL 3949310, at *14 (E.D. Va. Aug. 21, 2019) ("Because he has not established that he did not receive notice of his 2005 removal hearing, Perez-Almeida is not excused from satisfying Section 1326(d)(1) or (d)(2). Nor has he established a due process violation, as required by Section 1326(d)(3).").

### b. As to the Alleged Ineffectiveness of Immigration Counsel.

The ineffective assistance of an alien's immigration counsel may excuse failure to fully comply with all three requirements of Section 1326(d). *See Cerna*, 603 F.3d 43. Ineffective assistance of counsel in moving to reopen or reconsider a deportation case occurs when "counsel's performance impinged upon the fundamental fairness of the hearing in violation of the fifth amendment due process clause." *Iavorski v. INS*, 232 F.3d 124, 128 (2d Cir. 2000) (quoting *Rabiu v. INS*, 41 F.3d 879, 882 (2d Cir. 1994)). Such a deprivation of fundamental fairness is established when "1) 'competent counsel would have acted otherwise,' and 2) '[the alien] was prejudiced by

13

[ ] counsel's performance.'" *Rabiu*, 41 F.3d at 882 (quoting *Esposito v. INS*, 987 F.2d 108, 111 (2d Cir. 1993) (per curiam)).

The Defendant failed to appear at the 2007 Removal Proceeding, let alone retain counsel, so that he cannot contend that the judgment rendered therein occurred as a result as ineffective assistance of counsel. *See Shiufang Ouyoung v. Mukasey*, 305 F. App'x 769, 771 (2d Cir. 2009) ("[T]he BIA reasonably found that Ouyoung failed to demonstrate that her former counsel or immigration consultant were involved in filing a fraudulent BIA decision in this Court. Indeed, Ouyoung proceeded *pro se* before the BIA and this Court, and failed to provide evidence that her former counsel and immigration consultant were involved in those proceedings.").

Rather, he bases his claim for relief on the alleged ineffectiveness of Bernstein, the counsel he retained in 2009 to file a motion to re-open the 2007 Removal Proceeding. ECF 29-1, Ex. 16. In that motion, the Defendant contended that he "never received notice of his court date." *Id.* at 1. In support of this motion, the Defendant submitted an affidavit from his fiancé, claiming that when the Immigration Court sent the notice of the 2007 Removal Proceeding, she was residing with the Defendant at a different address in Glen Cove, New York. *Id.* at 3.

The Court finds that Bernstein raised the exact same notice arguments upon which the Defendant now bases his *coram nobis* petition, so that the Defendant can only establish he suffered from ineffective assistance of counsel by showing that Bernstein would have prevailed by introducing different evidence in the motion to reopen or by appealing the 2010 Denial Order. As the Court has already determined that the record before it fails to show the Defendant was entitled to vacating the Removal Order due to lack of notice, the Defendant has failed to establish he was prejudiced by Bernstein's performance. *See Qing Ling Chen v. Gonzales*, 201 F. App'x 74, 75 (2d Cir. 2006) (denying motion to reopen based on ineffective assistance which "offered no evidence

to show why 'had the appeal been made, the result would have been different.'" (quoting *Esposito*, 987 F.2d at 111); *United States v. Manragh*, 428 F. Supp. 2d 130, 138 (E.D.N.Y. 2006) (finding there was "no reasonable probability that defendant would have avoided deportation had appellate counsel performed properly" because "the charged error at the hearing level lack[ed] merit"); *United States v. Crown*, No. 99-cr-1044, 2000 WL 364890, at *8 (S.D.N.Y. Apr. 10, 2000) ("Even if Mr. Douglas' failure to file an appeal deprived defendant of judicial review, the Court cannot find that there was ineffective assistance in this case, because this failure was not so fundamentally unfair as to prejudice defendant in such a way that he would have been entitled to relief on direct appeal.").

Therefore, the Court finds that the Defendant has failed to demonstrate that the ineffectiveness of his immigration counsel excused his failure to satisfy Section 1326(d)(3).

### 2. As to the Defendant's Ineffective Assistance of Counsel Claim.

When a *coram nobis* motion is premised upon the alleged ineffective assistance of counsel, a petitioner bears the "heavy burden" of establishing both "(1) that counsel's performance was so unreasonable under prevailing professional norms that 'counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment' and (2) that counsel's ineffectiveness prejudiced the defendant such that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *United States v. Gaskin*, 364 F.3d 438, 468 (2d Cir. 2004) (quoting *Strickland v. Washington*, 466 U.S. 668, 694 (1984)). In applying this standard, a reviewing court must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action

'might be considered sound [legal] strategy.'" *Strickland*, 466 U.S. at 689, 104 S.Ct. 2052 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101, 76 S.Ct. 158, 100 L.Ed. 83 (1955)).

The Court finds that the Defendant has not established an entitlement to the extraordinary remedy of *coram nobis* on the basis of the alleged ineffectiveness of plea counsel. In sum, the Defendant's argument is that, had plea counsel conducted a further investigation, plea counsel would have learned that the Defendant failed to receive notice of the 2007 Removal Proceeding, and thus would have successfully moved to dismiss the indictment pursuant to Section 1326. However, the Defendant's argument fails because he has not established that he would have prevailed on such a motion, so that he cannot be considered prejudiced by plea counsel's actions.

*Gizewski v. United States*, 36 F. App'x 654 (2d Cir. 2002) is instructive. A defendant convicted of illegal re-entry in violation of Section 1326 argued that his counsel was ineffective in failing to challenge the underlying deportation based on the alleged lack of notice and allowing him to plead guilty. The Second Circuit found that "the record establishe[d] that he did in fact receive notice of the . . . deportation hearing," *Id.* at 657, defeating his ineffective assistance claim:

> Because Gizewski does not have a viable due process challenge to his deportation proceedings, his attorney's performance, in failing to attack the deportation proceedings and allegedly failing to advise Gizewski of this potential challenge prior to pleading guilty to the illegal reentry indictment, did not constitute ineffective assistance of counsel. Her performance did not fall below an objective standard of reasonableness and Gizewski could not have been prejudiced by her failure to attack the deportation proceedings, given that his due process rights were not violated.

*Id.*

Likewise, in *Barrera-Vasquez v. United States*, No. 08-cr-1127, 2011 WL 335168 (S.D.N.Y. Feb. 1, 2011), the petitioner alleged that his criminal trial counsel defending him against an illegal reentry charge failed to review the notice to appear in his deportation proceedings to determine whether he had a right to appeal the underlying removal order. This argument failed to

16

establish ineffective assistance, because "Petitioner did receive such notice" so that his "trial counsel would not have had grounds to claim insufficient notice, and therefore trial counsel's decision not to raise this argument does not constitute ineffective assistance." *Id.* at *5.

Similar to these cases, the Government satisfied its notice obligations during the 2007 Removal Proceeding. As a result, plea counsel would not have been able to obtain dismissal of the indictment.

Moreover, the Defendant has not carried his burden to establish that plea counsel's behavior was objectively unreasonable. Plea counsel decided to forego additional discovery and to focus instead on securing an efficient disposition in order to obtain a reduction under the Sentencing Guidelines and an expedited transfer to immigration custody where he could "litigate his removal, seek release while litigating his removal or consent to a more expedited removal from the United States." ECF 28-1, Ex. J, ¶ 7. Notably, plea counsel also specifically asked the Defendant "whether he was then aware of any basis to challenge the removal proceedings that led to the entry of his Order of Removal." *Id.* ¶ 5.

Considering the Defendant knew of his previous attempt to reopen the 2007 Removal Proceeding, the Defendant cannot fault plea counsel for failing to pursue a strategy that he never informed plea counsel of the underlying factual basis. *Cf. Tyson v. Keane*, 159 F.3d 732, 736 (2d Cir. 1998) ("Tyson certainly knew that and remembered the conversation[.] . . . If Tyson had simply informed counsel before trial of that fact there would have been a reassessment of the defense. The principal reason why the 'wrong' defense strategy was pursued at trial was not the trial judge's error but Tyson's own conduct[.]"); *United States v. Pitcher*, 7 F. App'x 119, 121 (2d Cir. 2001) ("[I]t is not ineffective counsel to rely on defendant's apparently truthful statements when determining trial strategy[.]").

Therefore, the Court finds that the Defendant failed to establish that he suffered a violation of his Sixth Amendment right to effective assistance of counsel.

### III. CONCLUSION

For the foregoing reasons, the Court denies the Defendant's petition for a writ of *coram nobis* vacating his conviction in its entirety.

It is **SO ORDERED**:

Dated: Central Islip, New York

May 9, 2020

/s/ Arthur D. Spatt

ARTHUR D. SPATT

United States District Judge